STATE EX REL. JOHN NIEMAN, TREASURER, v. JOHN FANGBONER, AUDITOR.

THE ACT OF THE GENERAL ASSEMBLY PASSED APRIL 27, 1896, IS UNCONSTITUTIONAL AND VOID.

> The act of the general assembly passed April 27, 1896 (92 O. L., 748), which provides that all taxes collected from oil wells not exceeding $2,500 per annum, should be returned to the township treasury where such oil wells are located and be used as a road fund in such township, is unconstitutional and void.

PETITION FOR MANDAMUS to require the county auditor to pay over money to certain townships in Sandusky county as provided by the act of the general assembly of the state of Ohio, passed April 27, 1896. 92 O. L., 748.

HAYNES, J. (orally.)

A petition for mandamus has been filed in this court praying that a writ may issue requiring the defendant to perform certain acts. The appearance of the auditor has been entered in the case and demurrer has been filed to this petition. Strictly speaking, in practice, perhaps the demurrer at this point is not the proper remedy. The supreme court however has held that the question of the sufficiency of the petition may be raised by the court in deciding whether it will allow a writ to issue. The writ shall not issue unless it shows upon its face that there is a proper cause of action. Mr. Nieman states that he was the duly elected treasurer of Woodville township, and says Woodville township has a large amount of land containing and producing mineral product to-wit, oil, that there is drilled and now in operation in said township a large number of oil wells producing mineral products, to-wit: oil, and that there will be hereafter, a large number of wells drilled, which in all probability, will produce a large quantity of oil.

State ex rel. Nieman, Treasurer, v. Fangboner, Auditor.

Relator further says that by the provisions of section 2792, Revised Statutes, as amended January 30, 1891, 88 O. L., 13, the board of equalization of Sandusky county assessed on said oil wells in said township the sum of $2,318.67, as the developments of said oil wells were made over and above the decennial appraisements of lands upon which said oil wells are situtated. That the owners, operators and managers of said oil wells in said township have long since paid into the treasury of said Sandusky county, Ohio, the said sum of $2,318.67, as provided for so as aforesaid, in said amended section 2792, and that the said $2,318.67 are now in the treasury of said Sandusky county, Ohio.

Relator further says that by the provisions of an act of the general assembly of the state of Ohio, passed April 27, 1896, 92 O. L., 748, which is as follows:

## "HOUSE BILL NO. 673.

"An act to provide a road fund in townships where oil wells are located or may hereafter be located.

(SANDUSKY COUNTY.)

"Section 1. Be it enacted by the general assembly of the state of Ohio, that in all counties which by the federal census of 1890 had a population of 30,617 nor more than 30,900, any money arising from the tax on oil wells drilled or hereafter to be drilled, shall be collected by the treasurer of the county as other taxes are, and be returned to the township treasury where such oil wells are located, in any sum not exceeding $2,500 per annum, to be used as a road fund in any such township.

"Section 2. Said funds shall be under the control of the township trustees, and shall be by them expended in maintaining and building roads, as to them seem advisable.

"Section 3. All acts and parts of acts in conflict with the provisions of this act, as to such conflict, hereby repealed, and this act shall take effect and be in force from and after its passage."

It is provided "that in all counties which by the federal census of 1890 have a population of 30,617 nor more than 30,900, any money arising from the tax on oil wells drilled or hereafter to be drilled shall be collected by the treasurer of the county as other taxes are, and be returned to the township treasurer where said oil wells are located in any sum not exceeding twenty-five hundred dollars ($2,500) per annum, to be used as a road fund in any such township."

He then states the population of Sandusky county; and that there is now, under and by vritue of said last mentioned act of the general assembly of the state of Ohio, passed April 27, 1896, to the credit of the treasurer of said Woodville township, Sandusky county, Ohio, the sum of two thousand three hundred and eighteen and sixty-seven hundredths dollars.

That by reason of the boreing and drilling of said wells in said townships the roads have been cut up and destroyed by hauling thereon engines, boilers and timbers, and it is necessary, in order to place said highways in a secure condition that said money aforesaid collected be returned to said treasurer to enable the township trustees to spend the same on the public highways of said townships as provided by section 2, etc.

Relator says he has demanded the return of this money and it has been refused and he therefore prays that a writ of mandamus issue commanding said defendant to issue his warrant upon the county treasurer of said county for the payment of said above named sum.

There is a little trouble in regard to this allegation of the petition as to the amount of taxes, for the reason that it doesn't follow the statute. It says under section 2792, Revised Statutes, as amended January 30, 1891, 88 O. L., 13, the board of county commissioners acting as a board of equalization assessed on said oil wells in said township the sum of $2,318.67. If this is literally true the money has not been properly raised. It had not been raised in pursuance of the statute. We have assumed and shall assume in deciding this case that this money is the amount of taxes that have been levied upon certain values that have been made by the board of equalization of the county upon oil well property. The act is found in section 2792, Revised Statutes, as amended in 88 O. L., 13, 2. "Each separate parcel of real property shall be valued at its value in money, excluding the value of the crops growing thereon; but the price for which such real property would sell at auction, or at forced sale, shall not be taken as the criterion of the true value, and where the fee of the soil of any tract, parcel or of land, is in any person or persons natural or artificial, and the right to any minerals therein in another or others, the same shall be valued and listed agreeably to such ownership in separate entries, specifying the interests listed, and shall be taxed to the parties owning different interests respectively;" that is to say, the land is returned at its value and the oil wells are to be listed at their value, "provided the assessor shall deduct from the value of any such tracts of land lying outside of municipal corporations the amount of land occupied and used by a canal or used as a public highway, at the time of such assessment, and if the assessor fails to do so, the county auditor is hereby authorized to make deductions as herein provided; and provided further, that the annual board of equalization may reduce the mineral value assessed against lands containing or producing petroleum (oil), natural gas, coal, ore, limestone, fire-clay, or other minerals in proportion as the product of such minerals has diminished." Now comes the clause upon which it says the board has acted in this matter: "If such mineral product was considered as a part of the value of said real estate in its previous appraisement for taxation, and annual assessors or boards of equalization may assess such mineral values as developments of his product or existence are made." That is to say, if the productions are increased, the board may increase the amount of the value upon the duplicate. When the assessment is made it stands the same as the assessment of real estate or other property, and is subject to taxation in the same manner as taxes are levied and assessed upon other property generally. By the laws of Ohio, certain bodies, commencing with officers of the state assess or fix the rate to be assessed for certain purposes upon taxable property of the state of Ohio. The board of county commissioners may make assessments and fix the rate of taxation that is to be upon the property in the county, that is to say, upon the value that is placed upon the duplicate, and these amounts are fixed for exclusive purposes, for purposes of the state, for purposes of school and county township purposes, and for the various purposes for which money is raised by taxation, and we assume under this allegation that inasmuch as the money has been raised in accordance with this section of the statute that it has been

State ex rel. Nieman, Treasurer v. Fangboner, Auditor.

raised by the board of equalization fixing the value of these oil wells, and then the county auditor assesses upon such values the various rates of taxation which he is authorized to assess under the laws which rates have been fixed by the various public authorities, so this sum of $2,318.67 represents in fact the moneys that have been collected by the treasurer for the various purposes for which money is raised in the state and that the aggregate amount is $2,318.67.

The constitution of the state of Ohio under article 12, provides for levying taxes in the state. Section 5 of that article reads as follows· "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied." Now this money being raised and paid into the treasury under the general laws of the state is to be paid out to the various treasurers and officers for the various purposes for which it has been assessed and collected. But this local law comes in and provides that this money which was so raised for specific and definite purposes shall be diverted from these purposes and shall be paid over to the treasurers of the township up to a certain amount and shall be used by them exclusively for the purpose of repairing roads, for road purposes, and the question is whether this act is in accordance with the statutes of the state of Ohio or whether in violation of the constitution of the state of Ohio. We have given this matter careful attention, because it is a question of importance to the townships interested. We are unable to see how we can sustain this act. Clearly it requires the treasurer to take these moneys that are raised for other specific purposes, and which the constitution especially says shall be applied to no other purposes, whatever, and applies them to another purpose to-wit: repairing of roads in different townships, and it seems to us so clear that that is a violation of this clause of the constitution that there can be no question whatever that the law should be declared to be unconstitutional.

Writ refused.

*Kinney & O'Farrell*, Attorneys for Relator.

*G. H. Withey*, Prosecuting Attorney, for Respondent.